STEPHEN VAN RENSSELAER and others, executors, &c., agt.
PETER PETRIE.
STEPHEN VAN RENSSELAER agt. THE SAME.

A declaration must be *personally* served: and such service must be by delivering it to the defendant, or offering it to him *within his reach*, or laying it down *within his reach.*

*February Term*, 1846.

MOTION by defendant to set aside judgment and subsequent proceedings in each cause, for irregularity.

The defendant stated that about six weeks previous to the 29th of October last (the day on which the affidavit was sworn to), he learned for the first time that judgments had been recovered against him in these causes; and a few days after such information, he was informed that the sheriff of Albany county had called at his house (in his absence), and stated that he should advertise defendant's farm for sale. On the 29th of October last, on inquiry at Albany, he learned that judgments were entered in these causes on the 11th June last, and execution in each issued on the 6th September last, in the first suit for the sum of $75.33, and in the second suit for the sum of $197.71. He stated that he never was served with

[*95]    any declaration, or with any *other process, for the commencement of either of the suits: this he knew and stated positively. He did not know the sheriff of Albany county, nor was he acquainted with David Russell, his deputy: but, some time in May last, a person came to the premises of defendant, who defendant was informed and believed was David Russell. Russell was at no time nearer to defendant than about three rods, and he was certain not nearer than two rods and a half; defendant heard some strange voice, and looked around and saw Russell, as defendant was afterwards informed, and defendant then immediately went away as fast as he could walk; defendant was not certain, but he might have run a little; but it was not much running, had defendant done his best, as he was over seventy-five years of age, and had the feebleness and lack of physical vigor and activity that belonged to his years. Defendant did not, as he positively and unequivocally stated, hear Russell say one word as to his having any declaration or process to serve on defendant in favor of Stephen Van Rensselaer or his executors, or of any other person, or a word about any declaration at all. The only words defendant heard at all were, " good morning," or words to that effect, addressed to defendant's son, who stood much nearer to Russell than defendant did. Defendant was somewhat deaf, and he did not hear any ordinary conversation, unless carried on in a higher or louder voice than usual. Defendant had never had any signs, signals or arrangements whatever, directly or indirectly, whereby he should be notified that the sheriff was coming. But he was informed and believed that horns had been blown, to give such notice in the country; but never with defendant's connivance or procurement. Russell did not attempt to follow him, as he saw or believed. Defendant's son was there, defendant's two daughters and another young woman at the time. Defendant never saw Russell before nor since that one time to his knowledge or belief. Defendant was informed that Russell had been at his house the day before, when he was absent from home; and at the last time Russell was re-

Van Rensselaer agt. Petrie.

cognized by one of defendant's daughters. Defendant was informed that the affidavit of Russell, upon which the defaults were entered in these causes, stated that Russell was within ten feet of defendant, and that he cried out to defendant that he had two declarations to serve on defendant, but did not state where defendant was, nor that defendant could or did hear him. Whether the declarations were left in defendant's house on a barrel or not, defendant had no knowledge or information, except from Russell's affidavit. Defendant never saw any such declarations, nor heard of their being left, if they were left, until *the day he made this af- [*96] fidavit. Defendant swore to merits. Gideon Petrie, a son of defendant, stated that he had heard the affidavit of the defendant read, and knew the contents ; and corroborated the statements made by defendant, and stated that at the time Russell came up and said "good morning," he took some papers from his hat and commenced reading from them ; that defendant, on account of his distance from Russell, and his deafness, could not, and did not, as he believed, hear any thing that Russell said or read, unless perhaps the salutation of "good morning." Immediately after Russell came up, and before he began to read, defendant had gone away, and was out of their sight ; Russell remained but a very few minutes on the premises. Russell deposited some papers on the head of a barrel, the declarations in these suits, and then left, without having an opportunity of saying any thing more to the defendant. Gideon Petrie stated that he took the declarations into his possession, and had had them in his possession and control ever since that time. The defendant never had seen the declarations, and was never informed or knew who had them, nor anything about them, until the time stated by defendant. Laura Petrie, a daughter of the defendant, who was present, corroborated the statements of defendant and Gideon Petrie.

On the part of the plaintiff, David Russell, deputy sheriff, stated that when he went to the house of the defendant to serve the declarations in these suits, he found defendant in

front of his house; as soon as defendant saw him, and he be-
lieved defendant knew him, defendant ran away from him;
he immediately cried out to him in a loud voice, that he had
two declarations to serve on him, one for Stephen Van
Rensselaer, and the other for the executors of Stephen Van
Rensselaer : defendant made no answer, but kept running.
Defendant was within ten feet of him, when he told him he
had two declarations to serve on him, was quite sure that
defendant heard him.  · Russell then left the declarations in
defendant's house on the head of a barrel, and some one in
the house throwed them out at him. ˙ Russell stated that in
every case when he had endeavored to serve a declaration at
the suit of Stephen Van Rensselaer, the defendant had made
efforts to run away or hide himself, and avoid service.  It
was always known throughout the manor of Rensselaerwyck,
by means of signals familiar to the tenants, when the sheriff
or his deputy was out for that purpose.  And it very rarely
happened that a defendant in any suit in favor of Stephen Van
Rensselaer could be found at home or elsewhere by the
the sheriff, or that the sheriff or his deputy succeeded in
serving a paper on him.

[*97]    *R. W. Peckham, *defendant's counsel.*
         J. S. Colt, *defendant's attorney.* ·
         D. McMartin, *plaintiffs' counsel.*
         Van Vechten & Wilkeson, *plaintiffs' attorneys.*

Bronson, Chief Justice.  Held, that the declarations were
not personally served; they should have been given or of-
fered to the defendant, *within his reach,* or laid down within
his reach.

Motion granted without costs.